IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CATHERINE EVANS HARVILL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>F. EVANS HARVILL and REGIONS BANK, )<br>)<br>Defendants. ) | Case No. 3:12-cv-00807<br>Judge Nixon / Knowles |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Plaintiff's "Motion for Leave to File Second Amended Complaint." Docket No. 69. Plaintiff has submitted a one-page Brief in support of the Motion (Docket No. 70), and a proposed Second Amended Complaint (Docket No. 69-1). Defendant F. Evans Harvill has filed a Response in Opposition to the Motion, arguing that the proposed amendments would be futile and fail to state a claim upon which relief can be granted. Docket No. 77. Defendant Regions Bank has also filed a Response in Opposition to the Motion, which adopts by reference and incorporates the Response filed by Mr. Harvill. Docket No. 78. Plaintiff has filed a Reply. Docket No. 87.

In this diversity case, Plaintiff alleges that she is the beneficiary of a trust settled by her mother, Peggy D. Harvill. Docket No. 13, p. 2-3. Defendant Regions Bank is the trustee of the Peggy D. Harvill Trust. Mr. Harvill, who is the father of Plaintiff, is Peggy Harvill's widower and held a power of attorney for her.

According to the Trust documents, Peggy D. Harvill created a revocable trust designated

as "The Peggy D. Harvill Trust Agreement Dated the 1st Day of June 1998." Docket No. 1, p. 11. Three Amendments followed, two in 1999 and a third in 2001. On September 13, 2001, Peggy D. Harvill executed a "Fourth Amendment" to the Trust Agreement Dated June 1, 1998, which was noted to be "a substitution in toto." Plaintiff avers that on May 6, 2004, Mr. Harvill drafted an Amendment to the Trust, exercising "his authority pursuant to the . . . Power of Attorney he held for Peggy D. Harvill." *Id.*, p. 3.

Thus, the relevant and operative Trust Agreement is a document headed "Fourth Amendment (a Substitution in Toto) to the Peggy D. Harvill Trust Agreement Dated June 1, 1998." In order to avoid confusion, this document will be referred to as the "Trust Agreement." The document executed by Mr. Harvill on May 6, 2004, which he executed pursuant to the Power of Attorney he held for Peggy D. Harvill, and which is headed, "Amendment to the Fourth Amendment (a Substitution in Toto) to the Peggy D. Harvill Trust Agreement Dated June 1, 1998," will be referred to as the "Amendment" or the "Trust Amendment." Docket No. 1, p. 34-38.

Plaintiff further avers that Peggy D. Harvill died late in the night of July 24, 2004, and that she was in a "vegetative condition the final months of her life." *Id.* Plaintiff further states upon information and belief that, when the May 6, 2004 Amendment was executed, Peggy D. Harvill did not have the requisite mental capacity to "direct her agent as to her wishes regarding the Amendment." *Id.*

The Amendment provided that "[Plaintiff], now Mrs. Kevin McKiever, shall receive no distribution under this Trust . . . unless and until the trustee has first received a written Affidavit signed by [Plaintiff] stating that she has severed all personal, physical, emotional, financial, and

2

any relationship whatsoever with one, Christoph Hrdina." The Amendment further directed the trustee to "verify the truth and veracity of the Affidavit," and provided that if Plaintiff did not satisfy the conditions of the Amendment, her interests in the Trust were to go to Kevin McKiever, Plaintiff's then-husband.

Plaintiff further contends that Defendants were in control and possession of the Amendment and that Plaintiff had no ability to acquire a copy of it "unless it was given to her by the Defendants." Docket No. 13, p. 5. Plaintiff avers upon information and belief that Mr. Harvill disclosed to Kevin McKiever in October 2011 that he (Mr. McKiever) was a beneficiary under the Amendment; that Mr. McKiever requested a copy of the Trust instrument from Defendant Regions; that in late March 2012, Mr. McKiever gave Plaintiff copies of the Amendment; and that, as of March 23, 2012, Defendant Regions prevented Plaintiff from receiving a copy of the Amendment by sending her a letter informing her that she was not a beneficiary of the Trust and therefore was not entitled to copies of the Amendment.[1] *Id.,* p. 5-6. Plaintiff avers that Defendants "conspired to conceal" the Amendment, and as a result, that she had no opportunity - upon her mother's death - to challenge the validity of the Amendment.

Based on these allegations, Plaintiff raised the following causes of action in her First Amended Complaint: (1) a request for a declaratory judgment finding that the Amendment to the Trust is "an unreasonable restraint on marriage and therefore void as against public policy"; (2) a claim for breach of fiduciary duty against the trustee; (3) a claim for undue influence against Mr. Harvill on the grounds that Peggy Harvill was incapable of communicating to him an intent to

---

[1] It is unclear how Plaintiff can argue, on the one hand, that she had no ability to acquire a copy of the Amendment unless it was given to her by Defendants, yet also admit that she received a copy of the Amendment from Mr. McKiever.

3

amend the Trust; (4) a claim for fraudulent concealment against the trustee and Mr. Harvill for conspiring to conceal the Amendment; and (5) a punitive damages claim against the trustee for fraudulent misrepresentation.[2]  Docket No. 13.

The proposed Second Amended Complaint seeks to add claims for fraud and constructive fraud.  The new allegations of the proposed Second Amended Complaint supporting these causes of action are as follows:

> 37. Subsequently following the death of Peggy D. Harvill, AmSouth now Regions as Trustee of the Peggy D. Harvill Trust created two separate trust shares.  The Peggy D. Harvill Family trust contained assets equaling the unified credit at the time of Peggy D. Harvill's death.  The Peggy D. Harvill Marital trust contained the balance of the remaining assets contained in the Peggy D. Harvill Trust along with real property that was probated into the trust by Peggy D. Harvill's pour over will.
>
> 38. The value of the Family Trust was approximately $1,333,015.57 as of March 31, 2005 and the value of the Marital trust was $562,891.87 as of March 31, 2005.
>
> 39. The beneficiaries of the Family trust are Defendant F. Evans Harvill and Plaintiff, Catherine Evans Harvill.
>
> 40. The discretionary guidelines for the Marital trust provide that the Trustee must take into consideration any other resources available to F. Evans Harvill before making any distribution of principal from the Marital trust.
>
> 41. The terms of the Family trust provide that there is to be no encroachment on this trust for the benefit of Defendant F. Evans Harvill until there is an exhaustion of all principal of

---

[2] The Court notes that Mr. Harvill has filed a Motion for Summary Judgment with regard to the claims set forth in the First Amended Complaint, which is pending before Judge Nixon. Docket Nos. 73, 74.  Plaintiff has filed a Response in Opposition to the Motion (Docket No. 89), and a supporting Brief (Docket No. 90).  Mr. Harvill has filed a Reply (Docket No. 100) and Plaintiff has filed a Sur-Reply (Docket No. 112).

the Marital trust.

42. The discretionary guidelines for the Family trust also provide that prior to any encroachment of the Family trust; the Trustee shall consider the other resources available F. Evans Harvill [*sic*].

43. Defendant F. Evans Harvill made systematic requests for principal from the Marital trust until it was depleted.

44. On or about June 22, 2006, Defendant F. Evans Harvill requested the sum of $308,000 which was the proceeds from the sale of real property owned by the marital trust. These funds were requested to be used to pay off F. Evans Harvill's mortgage on his then new home which he constructed with Sherri Harvill, his new wife.

45. These funds equaled more than half of the value of this property that Defendant F. Evans Harvill owns jointly with his new wife, Sherri Harvill.

46. Upon information and belief, F. Evans Harvill has substantial assets in his name that were not considered in making this distribution of principal from the marital trust.

47. Upon information and belief, F. Evans Harvill's adjusted gross income at the time of this request from the Marital trust was $187,237.

48. F. Evans Harvill has also requested encroachments from the Family Trust prior to the exhaustion of the Marital and [*sic*] after it was depleted, including but not limited to payment of his personal legal fees to Sherrard & Roe, PLC in this action. Furthermore, Regions Bank has paid the legal fees of F. Evans Harvill for defense of this lawsuit from the Family trust.

49. Upon information and belief, F. Evans Harvill has substantial assets and income in his name that were not considered in making any distribution from the Family trust by Regions Bank.

50. The balance of the Family Trust is $688,878.29 as of March 31, 2013.

5

Docket No. 69-1, p. 6-10.

The new counts set forth in the proposed Second Amended Complaint are as follows:

69. Paragraphs one (1) through sixty-eight (68) are incoporated herein by reference word for word.

70. Defendant Regions acted fraudulently by intentionally misrepresented [*sic*] an existing material fact and produced a false impression in order to mislead Plaintiff. Specifically, by failing to notify Plaintiff of her rights under the May 6, 2004 Amendment to the Peggy D. Harvill Trust, Defendant Regions intentionally misrepresented an existing material fact. This misrepresentation was further solidified by Defendant Region's letter dated March 23, 2012, addressed Plaintiff in Arkansas, specifically stating the Plaintiff was not a beneficiary under the Peggy D. Harvill Trust. These misrepresentations produced false impressions that mislead the Plaintiff.

71. As a result of Defendant Regions [*sic*] intentional, willful, malicious, grossly negligent and deceitful actions, Plaintiff should be awarded punitive damages.

72. Defendant F. Evans Harvill owed an equitable duty to his daughter as a named beneficiary of his deceased wife's trust.

73. Defendant F. Evans Harvill made all of the requests for discretionary distributions from the various trusts contained in the Peggy D. Harvill Trust.

74. Defendant F. Evans Harvill knew the Trustee was to take into consideration his assets prior to making any discretionary distribution.

75. Defendant F. Evans Harvill knew or should have known he did not qualify for the discretionary distributions based upon his considerable resources and income.

76. Upon information and belief, Defendant F. Evans Harvill planned for the funds he requested from the marital trust to be converted to joint assets with his new wife and thereby diverting them from his daughter upon his death.

6

77. Upon information and belief, Defendant F. Evans Harvill engaged in a course of conduct to intentionally deplete the Marital Trust to prevent the trust proceeds from passing to his daughter at his death.

78. Upon information and belief, Defendant F. Evans Harvill has and continues to engage in a course of conduct to intentionally deplete the Family Trust to prevent the trust assets from passing to his daughter from his death.

79. As a result of Defendant F. Evans Harvill's intentional, willful, malicious, grossly negligent and deceitful actions, Plaintiff should be awarded punitive damages.

. . .

80. Paragraphs one (1) through seventy-nine (79) are incorporated by reference word for word.

80 [*sic*] Defendant Regions acted fraudulently by intentionally misrepresented [*sic*] an existing material fact and produced a false impression in order to mislead Plaintiff. Specifically, by failing to notify Plaintiff of her rights under the May 6, 2004 Amendment to the Peggy D. Harvill Trust, Defendant Regions intentionally misrepresented an existing material fact. This misrepresentation was further solidified by Defendant Region's letter dated March 23, 2012, addressed to Plaintiff in Arkansas, specifically stating the Plaintiff was not a beneficiary under the Peggy D. Harvill Trust. These misrepresentations produced false impressions that mislead the Plaintiff.

81. Defendant Regions had a duty to notify Plaintiff of the May 6, 2004 Amendment.

82. Defendant F. Evans Harvill owed an equity duty to his daughter as a named beneficiary of his wife's trust.

83. Defendant F. Evans Harvill made all of the requests for discretionary distributions from the various trusts contained in the Peggy D. Harvill Trust.

84. Defendant F. Evans Harvill knew the Trustee was to take into consideration his assets prior to making any

7

> discretionary distribution.
>
> 85. Defendant F. Evans Harvill knew he did not qualify for the discretionary distributions based upon his considerable resources and income.
>
> 86. Upon information and belief, Defendant F. Evans Harvill planned for the funds he requested from the marital trust were going [*sic*] to be converted to joint assets with his new wife and would not flow to his daughter upon his death.
>
> 87. Upon information and belief, Defendant F. Evans Harvill engaged in a course of conduct to intentionally deplete the Martial [*sic*] Trust to prevent them from passing to his daughter upon his death.
>
> 88. Upon information and belief, Defendant F. Evans Harvill has and continues to engage in a course of conduct to intentionally deplete the Family Trust to prevent them from passing to his daughter to his death.

*Id.*, p. 10-13.

Defendant argues that the new counts fail to state a claim in that: neither new count alleges all of the elements necessary for its respective cause of action; neither new count alleges fraud with the requisite particularity; the new counts are barred by the Trust Agreement; and Plaintiff lacks standing because she cannot show that she was damaged under these new theories because the May 6, 2004 Amendment is valid as a matter of law.

As Defendant correctly notes, "where a proposed amendment would not survive a motion to dismiss, the court need not permit the amendment." *Thiokol Corp. v. Dep't of Treasury*, 787 F.2d 376, 383 (6th Cir. 1993).

The United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). The *Iqbal* Court stated in part as follows:

8

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

As will be discussed in detail below, the Court essentially agrees with every argument made by Defendant.

## II. Analysis

**A. Plaintiff has failed to state a claim upon which relief can be granted under a theory of fraud or constructive fraud.**

A plaintiff asserting a claim of fraud under Tennessee law must show the following six elements: "(1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied upon the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation." *PNC Multi-Family Capital Institutional Fund v. Bluff City Community Development Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012).

With regard to Plaintiff's proposed claims for constructive fraud, constructive fraud "is

9

essentially fraud without the element of intent." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 39 (Tenn. Ct. App. 2006). Plaintiff's claim for constructive fraud does not contain any allegations of misrepresentation or reliance by Plaintiff.

Quite simply, the proposed Second Amended Complaint fails to allege either misrepresentation or reliance. Plaintiff does not allege that Mr. Harvill made any misrepresentation to her, nor does the Second Amended Complaint allege that Plaintiff relied upon any representation whatsoever. Plaintiff concedes that, in order to prove fraud, she must show a representation that was false. Docket No. 87, p. 2. After so conceding, however, she fails to show that there was a false representation made by Mr. Harvill or Regions. Instead, she switches to an argument with regard to constructive fraud, stating:

> Even absent false representation, the Defendants can be guilty of fraud, misrepresentation and deceit by the constructive fraud practiced on the Plaintiff. Constructive fraud is defined as "acts, statements or **omissions**, which operate as a virtual fraud on individuals, or which, if generally permitted, would be prejudicial to the public welfare, and are not clearly resolvable into mere accident or mistake, and yet may have been unconnected with any selfish evil design or may amount, in the opinion of the person chargeable therewith, to nothing more than what is justifiable or allowable." *Maxwell v. Land Developers, Inc.,* 45 S.W.2d 869, 875 (Tenn. App.) *cert. denied,* (1972). Constructive fraud may be established where there is a legal duty or equitable duty, whether or not fraudulent intent is present. *Edwards v. Travelers Insurance of Hartford Conn.*, 563 F.2d 105 [6th Cir. 1977]. Failure to disclose thus becomes fraudulent when it is the duty of the party having the knowledge to reveal the facts to the other. *Id.* Where there is a confidential relationship between the parties there is a duty to disclose. A confidential relationship is one in which "confidence is placed by one in the other and the recipient of that confidence is the dominate personality [??] with the ability, because of that confidence, to influence and exercise dominion over the weaker or dominated party. *Bill Gibson v. Jimmy Gibson*, 2004 Tenn. App. LEXIS 722. The existence of a confidential relationship is a question of fact. *Id.*

10

Docket No. 87, p. 2-3 (bold in original).

*Maxwell*, however, was a case involving acts or statements by defendants, not omissions. Thus, *Maxwell*'s language concerning omissions is pure dicta. Moreover, in *Maxwell*, plaintiffs offered evidence that one of the owners of an area known as Mimosa Heights had made a representation that she and her husband relied upon in purchasing property. The trial court excluded that testimony. The court of appeals, however, determined that that testimony should not have been excluded. Additionally, the trial court denied plaintiffs' motion to amend their complaint to allege constructive fraud. The court stated in part:

> The amendment would have merely clarified and made more explicit the allegations of representations relied upon by the complainants and how those representations are chargeable to the defendants. . . . The proof tendered and rejected thus tend to establish constructive fraud.

485 S.W.2d at 876.

Thus, Plaintiff cannot rely upon *Maxwell* for the proposition that omissions may establish either constructive fraud or fraud itself.

Similarly, *Edwards* does not support Plaintiff's position. The *Edwards* Court described that case in part as follows:

> Preliminarily, suffice it to say that plaintiff Edwards, then a young and attractive woman, was injured in an automobile accident, in January, 1972, under circumstances which caused appellant Travelers to, in effect, concede liability under a $50,000 policy issued by it covering the car in which she was a passenger. . . She employed plaintiff Jackson as her attorney, and he advised Travelers of such representation. Travelers responded that until Mrs. Edwards was divorced or had a legal guardian, it would not recognize Jackson as her attorney. Based upon the false representation that she could not have an attorney and have her bills paid on an "advance pay system," Mrs. Edwards, in March, 1972, signed a statement written by a Travelers' agent to the effect

11

> that she was not represented by counsel. Jackson was thereby led to believe that he had been discharged and did not participate in any way in the settlement which followed. That settlement, made in August, 1972, was for $25,000 plus special damages already paid for before the settlement for a total amount of $34,974.35. The settlement was preceded by representations by a Travelers' agent to the effect that the carrier could go no higher and that all medical expenses had been paid, neither of which was in fact a true statement.

563 F.2d at 110.

The *Edwards* Court specifically noted:

> Hence, Travelers was guilty of fraud, misrepresentation, and deceit by the false representations of material fact upon which plaintiff Edwards relied to her damage. Even absent such false representations, defendant Travelers still would have been guilty of fraud, misrepresentation, and deceit by the constructive fraud practiced on plaintiff Edwards.

563 F.2d at 114.

Thus, any statements made by the *Edwards* Court with regard to constructive fraud were again complete dicta.

*Edwards* also stated that, because defendant Travelers had induced the breach of contract between plaintiff Edwards and her attorney (plaintiff Jackson), Travelers had established a confidential relationship with her in which Travelers had the duty to disclose all material facts to her when attempting to obtain a settlement in August, 1972. *Id.*, p. 115. The court stated in part:

> Plaintiff Edwards was a severely injured claimant, suffering physically and emotionally. Requiring the advice of counsel, she accepted the offer of the services of plaintiff Jackson. Travelers, however, required plaintiff Edwards not to have counsel to obtain the benefits of the advance pay system. Travelers then had a practical domination over plaintiff Edwards, who was led to trust Travelers. Plaintiff Edwards in fact did place trust in Davidson, the claim representative for Travelers, saying that it was "it was as though he was the boy next door."

12

*Id.* at 115.

Plaintiff apparently seeks to establish a "relationship of trust" between herself and Mr. Harvill by referring to the fact that Mr. Harvill, acting as attorney for her, drafted a durable power of attorney which was executed in December 1994. The Court notes, however, that this allegation is not set forth in the proposed Second Amended Complaint; it appears only in Plaintiff's Reply regarding the Motion to Amend. While the proposed Second Amended Complaint avers that Mr. Harvill had an "equitable duty" to Plaintiff to disclose the Amendment, that allegation is a legal conclusion, not a factual averment. The Court, therefore, does not have to accept it, and the Court does not. The idea that Mr. Harvill owed some "equitable" duty to disclose the Amendment based upon the fact that he held a durable power of attorney for his daughter executed 12 years earlier is not convincing. Certainly the facts relied upon by the *Edwards* Court to establish a "relationship of trust" are not comparable to the drafting of a durable power of attorney.

**B. Plaintiff has not pled fraud or constructive fraud with the requisite particularity.**

Even if Plaintiff had stated a claim for fraud and/or constructive fraud she still could not recover under either theory. Fraud must be pled with particularity pursuant to Fed. R. Civ. P. 9(b), which requires allegations of "the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendant; and the injury resulting from the fraud." *U.S. ex rel Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008). Because constructive fraud is a kind of fraud, it logically follows that constructive fraud must be pled with particularity.

**C. Plaintiff's proposed new claims are inconsistent with the language of the Trust Agreement, and Plaintiff has failed to show how she was damaged.**

Plaintiff's proposed new claims are also inconsistent with the language of the Trust Agreement. In her proposed Second Amended Complaint, Plaintiff essentially makes allegations that, under the Trust Agreement, the trustee should have considered the resources available to Mr. Harvill before making distributions of principal to him. When Mr. Harvill requested distributions of principal, the trustee distributed principal to him without considering his other resources. Under the language of the Trust Agreement, however, the trustee was granted considerable discretion in determining whether to distribute principal to Mr. Harvill. The Trust Agreement states in part, "[t]he trustee shall recognize that [Mr. Harvill] is the object of my bounty and great affection, and I wish him provided for to the full extent of my ability to do so while maintaining a reasonable preservation of the TRUST for his benefit." Trust Article IV, §A(5)(a).

Plaintiff attempts to claim that Defendants "defrauded" her by failing to take her interests into consideration. The Trust Agreement provides, however, that the trustee shall not give "any consideration" to "the potential contingent beneficiary [*i.e.*, Plaintiff] that would take after death of my spouse." Additionally, the Trust Agreement expressly states that the trustee could distribute the entire principal to support Mr. Harvill. Trust Article V, §B provides that, if the Trust's income was insufficient to meet his needs, "the Trustee is directed at any time, and from time to time . . . to pay to or for the benefit of [Mr. Harvill] so much of the principal of the Trust, up to and including the whole thereof. . . ."

Finally, as Mr. Harvill cogently argues, Plaintiff's case is essentially based upon the argument that the May 6, 2004 Amendment is invalid. The validity of the Amendment is at issue in the pending Summary Judgment Motion, and the undersigned will not address that issue

14

except to state that it is difficult to see how or why the Amendment would be invalid.

As discussed above, Plaintiff has averred that on or about December 19, 1994, Peggy D. Harvill executed a Durable Power of Attorney naming Mr. Harvill as her attorney-in-fact. Docket No. 13, p. 2. The May 6, 2004 Amendment provides in relevant part:

> I, Peggy D. Harvill, acting by and through F. Evans Harvill as my Agent and Attorney-in-fact, pursuant to the General Durable Power of Attorney executed 19 December 1994, and recorded in ORBV551, P. 2406 of the Register's Office of Montgomery County, Tennessee, and further, pursuant to TCA §34-6-109(a) which states:
>
>> "(a) Generally to do, sign or perform in the Principal's name, place instead any act, deed, matter, or thing whatsoever, that ought to be done, signed or performed, or that, in the opinion of the attorney-in-fact, ought to be done, signed or performed in and about the premises, of every nature and kind whatsoever, to all intents and purposes whatsoever, as fully and effectually as the Principal could do if personally present and act [*sic*]. The enumeration of specific powers hereunder shall not in any way limit the general powers conferred herein;"
>
> Further, paragraph (w) of the referenced Power of Attorney which states:
>
>> "Exercise any powers of revocation, amendment, or appointment which the Principal may have over the income or principal of any Trust."

Docket No. 1, p. 34.

Plaintiff never disputes the validity of the Power of Attorney. Plaintiff admits that, on May 6, 2004, Peggy D. Harvill was in a vegetative state. At that time, Mr. Harvill drafted the Amendment to the Trust. The Trust Agreement provides that Peggy D. Harvill had the absolute right to amend or revoke the Trust Agreement at any time during her life. Docket No. 1, p. 32. The Trust Agreement specifically states, "I [referring to Peggy D. Harvill] reserve the right from

15

time to time during my life, by written instrument delivered to the Trustee, to amend or revoke this instrument in whole or in part . . . ." *Id*.

Mr. Harvill, as her attorney-in-fact also had the right pursuant to the Power of Attorney, to exercise "any powers of revocation, amendment, or appointment which the Principal [*i.e.*, Peggy D. Harvill] may have over the income or principal of any Trust." Docket No. 1, p. 34. The trustee had the right to pay to or for the benefit of Mr. Harvill amounts "up to and including the whole" of the principal of the Trust. Docket No. 1, p. 20.

Even if the Amendment is somehow invalid, the rights of the parties would be governed by the Trust Agreement itself.[3] Thus, whether the Amendment is valid or invalid, the Court must still consider the provisions of the Trust Agreement.

The Trust Agreement provided specific instructions as to how the trustee was to administer the Trust principal and any net income thereof. The Agreement states, in relevant part:

> A. The Trustee shall distribute to me [referring to Peggy D. Harvill] or apply for my benefit such amounts of net income and principal, even to the extent of exhausting principal, as the Trustee believes desirable from time to time for my health, support in reasonable comfort, best interests, and welfare, considering all circumstances and factors deemed pertinent by the Trustee. Any undistributed net income shall be accumulated and added to principal, as from time to time determined by the Trustee.
>
> B. In addition, the Trustee shall distribute to me or others such amounts of net income and principal as I may from time to time direct orally or in writing, and my receipt of any such distribution shall be conclusive that such was appropriately

---

[3] The Amendment further provides, "All other terms, conditions and provisions of the Trust Agreement shall remain the same." Docket No. 1, p. 36.

done by the Trustee.  Provided however if the Trustee believes that I am unable to manage my business affairs properly because of advanced age, illness or other cause, the Trustee may, in the Trustee's sole discretion, decide not to honor my written or oral instruction.  In such event, in addition to the Trustee complying with Paragraph A of this Article II, regarding distribution for my benefit, the Trustee shall distribute to or apply for the benefit of F. EVANS HARVILL, hereinafter referred to as my SPOUSE, such amounts of income and principal to provide for his in such fashion as the Trustee believes desirable for his health, support and reasonable comfort, best interest and welfare, considering all circumstances and facts to be deemed pertinent by the Trustee, including any other income or resources of my SPOUSE.

. . .

5. (a) *If my SPOUSE and my DAUGHTER both survives* [*sic*] *me, after the funding the Trust created in Paragraph (A)(4)(a) above herein, I direct that the Trustee shall set aside all the remaining assets of this Trust to be held and administered for the benefit of my SPOUSE, and shall during the life of my SPOUSE in quarterly of more frequent intervals pay to my SPOUSE or apply for such SPOUSE benefit of all the net income therefrom, beginning as of the date of my death, and no less frequently than annually.* Notwithstanding any other provisions in this Trust, my Trustee shall have the reasonable time after my death within which to set aside assets for the purpose of funding this Trust.  If funded or upon funding of this Trust, any income received hereunder shall be considered income attributable to my SPOUSE, provided however, the Trustee shall estimate the amount applicable hereto and establish same subject to final adjustments upon the final settlement of my federal estate tax proceedings on my estate. *In addition to paying to or applying for the benefit of my SPOUSE all the net income from this sum, the Trustee shall, considering other resources available to my SPOUSE, from time to time pay to or apply for the benefit of my SPOUSE, so much of the principal as reasonably required to provide for my SPOUSE, in a manner reasonably desirable for his health, comfort and welfare and to the full extent reasonably attainable, as my SPOUSE would enjoy or be able to enjoy if I were living and providing for him from the assets of this TRUST.  The*

17

> *Trustee shall recognize that my SPOUSE is the object of my bounty and great affection, and I wish him provided for to the full extent of my ability to do so while maintaining a reasonable preservation of the TRUST for his benefit and without any consideration being given to the potential contingent beneficiary that would take after death of my SPOUSE.*
>
> (b)  Upon the death of my SPOUSE the Trustee shall pay any of the accrued interest and/or income herefrom to the estate of my SPOUSE and shall then pay from the principal of this Trust directly to the appropriate taxing authority, that portion of any legacy, succession, inheritance, transfer, estate or other tax or duty or any one or more of them as finally determined, including interest and penalty therefrom, levied or assessed against such estate which would not have been so levied or assessed had this Trust not been included in the taxable estate of my SPOUSE, and any remaining assets shall be transferred to the TRUST created in Article IV, Paragraph 1 for the benefit of my DAUGHTER (or her issue) and be administered in accordance with the provision of Article V, Paragraph A. If my DAUGHTER be deceased without issue, the provisions of Article V, Paragraph (D) shall apply.

Docket No. 1, p. 12, 15-16 (emphasis added).

Plaintiff avers that Mr. Harvill "owed an equitable duty to his daughter as a named beneficiary of his deceased wife's Trust." As discussed above, however, the Trust Agreement plainly provides that Mr. Harvill shall be provided for "without any consideration being given to the potential contingent beneficiary that would take after the death" of Mr. Harvill (namely Plaintiff).

Plaintiff contends that Mr. Harvill has "affirmatively represented that the Plaintiff was not a beneficiary of her mother's estate." Docket No. 87, p. 3. For this proposition, however, Plaintiff cites to ¶ 32 of the Second Amended Complaint. Paragraph 32 does not support that statement, and even if it did, the Second Amended Complaint is not the operative Complaint

18

before the Court at this point. Furthermore, while Plaintiff also claims that the Trustee misrepresented to her that she was not a beneficiary of the Trust, that representation is entirely correct, assuming that the Trust Amendment is valid.[4] Moreover, the alleged representation made by the trustee was in a letter dated March 23, 2012, and Plaintiff offers no explanation as to how she was damaged by that representation.

Plaintiff improperly attempts to characterize herself as a beneficiary under the Trust Agreement. Plaintiff was, at most, only a contingent beneficiary under the Trust Agreement. Peggy Harvill had the right to change the Trust during her lifetime, and could have amended the Trust to eliminate any benefits for Plaintiff. Mr. Harvill, acting pursuant to a valid Power of Attorney, also had the same rights. Thus, the Court can ascertain no damage to Plaintiff that resulted from the actions of Defendants.

### III.  Conclusion

For the foregoing reasons, the undersigned recommends that Plaintiff's "Motion for Leave to File Second Amended Complaint" (Docket No. 69) be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of

---

[4] There is no question raised in any of the materials before the Court that Plaintiff did not comply with the requirements of the Amendment.

service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge